IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

FEB 19 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:25-cr-25-KDB |
| | ) | |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| (1) ROBBIE THOMPSON a/k/a ROBERT THOMPSON, | ) ) | Violations: 18 U.S.C. § 2 |
| (2) SERISSA MARRERO, and | ) | 18 U.S.C. § 371 |
| (3) TERQUERIOUS BYRD, | ) | 18 U.S.C. § 215(a)(1) |
| Defendants | ) | 18 U.S.C. § 1028A |
| | ) | 18 U.S.C. § 1344 |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

**Introduction**

1. Beginning no later than April 13, 2022, and continuing through at least May 20, 2022, Defendants (1) ROBBIE THOMPSON (THOMPSON), (2) SERRISA MARRERO (MARRERO), and (3) TERQUERIOUS BYRD (BYRD), conspired, confederated and agreed with Jaminata Starks (Starks) and others known and unknown to the grand jury, to devise and execute a scheme to fraudulently access customers' accounts at a federally insured financial institution (hereinafter "Bank No. 1") and withdraw funds without the customers' knowledge or consent. In the course of the scheme, THOMPSON bribed Starks, an employee and associate banker working in a Charlotte, North Carolina, branch of Bank No. 1 to open bank accounts using Bank No. 1's customers' personal identifying information (PII) without their authority. As part of the scheme, Defendants and Starks knowingly transferred, attempted to transfer, and caused the transfer of at least $120,000 from the custody and control of Bank No. 1 without lawful authority.

2. Starks, charged elsewhere, was a resident of Charlotte, North Carolina, who worked at a Bank No. 1 branch in Charlotte, North Carolina. Starks had the authority to open bank accounts and transfer funds between Bank No. 1's customers' bank accounts.

3. THOMPSON was also known as "the Uncle" and a "Pro." Pro—an apparent abbreviation of "profile"—was a reference to persons who pose as existing bank customers and use counterfeit identification with the stolen PII of existing bank customers and a photograph of the Pro.

4. Coconspirator A, whose true identity is unknown to the grand jury, also posed as a Pro to access a female customer's account.

5. Coconspirators B and C, persons known to the grand jury, acted as "Heads" in the scheme. Heads were persons who used their true identity and bank accounts to receive funds from Bank No. 1's customers' bank accounts. Heads would accompany the Pros to

the Bank No. 1 branch where Starks worked to open joint accounts in the name of an existing Bank No. 1 customer and a Head. One or more of the coconspirators would thereafter access funds transferred from the existing customers' accounts to the joint accounts.

6. MARRERO and BYRD acted as "Heads."

7. Victim GC was a Bank No. 1 customer who resided in New Jersey.

8. Victim KA was a Bank No. 1 customer who resided in Florida.

9. Victim JM was a Bank No. 1 customer who resided in Florida.

10. Victim LB was a Bank No. 1 customer who resided in New York.

11. Bank No. 1 was a financial institution as defined in Title 18, United States Code, Section 20, the accounts and deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

## COUNT ONE
(Conspiracy)

12. The grand jury realleges and incorporates by reference herein, all of the allegations contained in paragraphs 1 through 11 of this Bill of Indictment, and further alleges that:

13. Beginning no later than April 13, 2022 and continuing through at least May 20, 2022, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,
    (1) **ROBBIE THOMPSON a/k/a ROBERT THOMPSON,**
    (2) **SERISSA MARRERO, and**
    (3) **TERQUERIOUS BYRD,**

did knowingly combine, conspire, confederate, and agree with one another, Coconspirator A, Coconspirator B, Coconspirator C, Starks, and others known and unknown to the grand jury to commit offenses against the United States.

*Objects of the Conspiracy*

14. It was a part and an object of the conspiracy that THOMPSON, MARRERO, BYRD, Coconspirator A, Coconspirator B, Coconspirator C, Starks, and others would and did execute and attempt to execute a scheme and artifice to defraud Bank No. 1 and obtain monies owned by, and in the custody or control of Bank No. 1, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1344(1) and (2).

15. It was a part and an object of the conspiracy that THOMPSON, MARRERO, BYRD, Coconspirator A, Coconspirator B, Coconspirator C, and Starks would, and did, knowingly use, without lawful authority, the means of identification of another person, to wit: the PII of actual Bank No. 1 customers, in violation of Title 18, United States Code, Section 1028A. Such use was made during and in relation to the felony offenses of

making false entries in the records of a financial institution and bank fraud in violation of Title 18, United States Code, Sections 1005 and 1344(1) and (2), respectively.

## *Manner and Means*

16. THOMPSON, MARRERO, BYRD, Coconspirator A, Coconspirator B, Coconspirator C, and Starks, carried out the conspiracy through the following manner and means, among others:

    a. THOMPSON and Coconspirator A, and one of the Heads, including BYRD and MARRERO, would meet Starks in the Bank No. 1 branch where she worked. THOMPSON and Coconspirator A would pose as Bank No. 1 customers using counterfeit identification with their photographs and the customers' PII. Starks would use her position at Bank No. 1 to open joint accounts using the Bank No. 1 customers' PII presented by THOMPSON and Coconspirator A and the true identities of the "Heads." Starks and the conspirators would then transfer and cause the transfer of funds from the existing customers' accounts to joint accounts on which the Heads were cosigners. One or more of the conspirators would then access funds taken from the existing customers' accounts through the newly opened joint accounts.

    b. Starks was offered $2,000 for each joint account she opened without the authority of an existing Bank No. 1 customer. THOMPSON would pay Starks bribes in U.S. currency as a reward for opening the joint accounts.

    c. THOMPSON, Coconspirator A, Starks, and others would knowingly use, without lawful authority, the PII of another person, to wit: actual Bank No. 1 customers.

## *Overt Acts*

17. In furtherance of the conspiracy and to affect the objects thereof, there was committed by at least one of the conspirators, in the Western District of North Carolina and elsewhere, at least one of the following overt acts, among others:

    a. On or about April 13, 2022, Starks met THOMPSON and Coconspirator B, at the Bank No. 1 branch where she worked and opened a joint account in the name of Victim GC and Coconspirator B. THOMPSON used Victim GC's stolen PII to open the joint account.

    b. On or about April 13, 2022, Starks processed the transfer of $30,000 from Victim GC's existing Bank No. 1 account into the joint account opened in the name of Victim GC and Coconspirator B.

    c. On or about April 13, 2022, THOMPSON paid Starks approximately $2,000 for her role in opening a joint account with Coconspirator B and Victim GC.

    d. On or about April 22, 2022, Starks met THOMPSON and BYRD at the Bank No. 1 branch where she worked and opened a joint account in the name of Victim KA and BYRD. THOMPSON used Victim KA's stolen PII to open the joint account.

e.  On or about April 22, 2022, one or more of the conspirators caused the transfer of $20,000 from Victim KA's existing account into the new joint account.

f.  On or about April 22, 2022, THOMPSON paid Starks approximately $1,700 in U.S. currency for her role in opening a joint account in the name of BYRD and Victim KA.

g.  On or about April 26, 2022, Starks met THOMPSON and Coconspirator C at the Bank No. 1 branch where she worked and opened a fraudulent joint account in the name of Victim JM and Coconspirator C. THOMPSON used Victim JM's stolen PII to open the joint account.

h.  On or about April 26, 2022, one or more of the conspirators caused the transfer of $50,000 from Victim JM's existing account into the joint account.

i.  On or about April 30, 2022, Starks met Coconspirator A and MARRERO at the Bank No. 1 branch where she worked and opened a joint account in the name of Victim LB and MARRERO. Coconspirator A and MARRERO used Victim LB's stolen PII to open the joint account.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO and THREE
(Bank Bribery)

18. The grand jury realleges and incorporates by reference herein, all of the allegations contained in paragraphs 1 through 11 of this Bill of Indictment, and further alleges that:

19. On or about the dates listed in Counts Two and Three below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere

(1) **ROBBIE THOMPSON a/k/a
ROBERT THOMPSON**

defendant herein, aided and abetted by others known and unknown to the grand jury, corruptly gave, offered, and promised things of value to Starks, to wit: cash payments in excess of $1,000, with the intent to influence and reward Starks, an employee and agent of Bank No. 1, in connection with the business and transactions of such financial institution, to wit: the opening of joint accounts and the unauthorized transfer of funds:

| Counts | Date | Bribe | Location |
|---|---|---|---|
| **TWO** | April 13, 2022 | Approximately $2,000 | Near Pecan and Central Avenues, Charlotte, NC |
| **THREE** | April 22, 2022 | Approximately $1,700 | Near University City, Charlotte, NC |

All in violation of Title 18, United States Code, Sections 215(a)(1) and 2.

4

## COUNTS FOUR through SEVEN
(Bank Fraud)

20. The grand jury realleges and incorporates by reference herein, all of the allegations contained in paragraphs 1 through 11 and Count One of this Bill of Indictment, and further alleges that:

21. On or about each of the dates reflected below for each of Counts Four through Seven, within Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendants named in each of Counts Four through Seven, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly execute and attempt to execute a scheme and artifice to defraud Bank No. 1, as described in the Introductory paragraphs and Count One of this Bill of Indictment, and to obtain moneys, funds, and credits owned by and under the custody and control of said financial institutions by means of false and fraudulent pretenses and representations.

| Counts | Date | Defendants | Bank No. 1 Customer | Funds Transferred and Attempted Transfers |
|--------|------|------------|---------------------|-------------------------------------------|
| FOUR | 4/13/2022 | (1) THOMPSON | Victim GC | $30,000 |
| FIVE | 4/22/2022 | (1) THOMPSON and (3) BYRD | Victim KA | $20,000 |
| SIX | 4/26/2022 | (1) THOMPSON | Victim JM | $50,000 |
| SEVEN | 4/30/2022 | (2) MARRERO | Victim LB | $20,000 |

All in violation of Title 18, United States Code, Sections 1344(1) & (2) and 2.

## COUNTS EIGHT through TEN
(Aggravated Identity Theft)

22. The grand jury realleges and incorporates by reference herein, all of the allegations contained in paragraphs 1 through 11 of the Bill of Indictment, and further alleges that:

23. On or about the dates listed in Counts Eight through Ten below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant

**(1) ROBBIE THOMPSON a/k/a
ROBERT THOMPSON**

aided and abetted by others known and unknown to the grand jury, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, the names and PII of the victims listed in each of Counts Eight through Ten below, during and in relation to felony violations of Title 18, United States Code, Sections 1005 and 1344, knowing that the means of identification belonged to another actual person as set forth below:

| Count | Date | Means of Identification |
|---|---|---|
| **EIGHT** | 4/13/2022 | Victim GC's name and Bank No. 1 account number |
| **NINE** | 4/22/2022 | Victim KA's name and Bank No. 1 account number |
| **TEN** | 4/26/2022 | Victim JM's name and Bank No. 1 account number |

All in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT ELEVEN
(Aiding and Abetting Aggravated Identity Theft)

24. The grand jury realleges and incorporates by reference herein, all of the allegations contained in paragraphs 1 through 11 of the Bill of Indictment, and further alleges that:

25. On or about April 30, 2022, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant

### (2) SERRISA MARRERO

aiding and abetting Coconspirator A and Starks and other persons known and unknown to the grand jury, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, Victim LB in relation to felony violations of Title 18, United States Code, Sections 1005 and 1344, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Sections 2 and 1028(A).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

26. Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offense for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981, and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment; and

    b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a).

27. The grand jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

    a.    A forfeiture money judgment in the amount of at least $31,000, such amount constituting the proceeds of the violations set forth in this Bill of Indictment.

A TRUE BILL:



FOREPERSON

LAWRENCE J. CAMERON
ACTING UNITED STATES ATTORNEY

MICHAEL E. SAVAGE
ASSISTANT UNITED STATES ATTORNEY